# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| OAKLAND TACTICAL SUPPLY, LLC, | ) |
| JASON RAINES, MATTHEW REMENAR, | ) |
| SCOTT FRESH, RONALD PENROD, AND | ) |
| EDWARD GEORGE DIMITROFF, | ) |
| | ) |
| Plaintiffs, | ) |
| | )Case No. 18-cv-13443-BAF-DRG |
| v. | )Honorable Bernard A. Friedman |
| | ) |
| HOWELL TOWNSHIP, | ) |
| a Michigan general law township, | ) |
| | ) |
| Defendant. | ) |

_____/

Roger L. Myers (P49186)
MYERS & MYERS, PLLC
Attorneys for Plaintiffs
915 N. Michigan Avenue, Suite 200
Howell, Michigan 48843
(517) 540-1700
rmyers@myers2law.com

Martha A. Dean (Admitted 12/6/18)
Co-Counsel for Plaintiffs
Law Offices of Martha A. Dean LLC
144 Reverknolls
Avon, CT 06001
mdean@mdeanlaw.com

_____/

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

NOW COME the Plaintiffs, Oakland Tactical Supply, LLC, Jason Raines, Matthew Remenar, Scott Fresh, Ronald Penrod, and Edward George Dimitroff by and through undersigned counsel, and, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, move this Honorable Court to enter summary judgment in their favor.

A Memorandum in Support of this Motion and Statement of Material Facts not in Dispute will be filed at or near the time of the filing of this Motion.

Dated:  June 19, 2020

Respectfully submitted,

**MYERS & MYERS, PLLC**
Attorneys for Plaintiffs

By: /s/ Roger L. Myers
Roger L. Myers (P49186)
915 N. Michigan Avenue, Suite 200
Howell, MI 48843
(517) 540-1700
rmyers@myers2law.com


/s/ Martha A. Dean
Martha A. Dean, Esq. (Admitted 12/6/18)
**LAW OFFICES OF MARTHA A. DEAN, LLC**
144 Reverknolls
Avon, CT 06001
Phone: 860-676-0033
Fax: 860-676-1112
mdean@mdeanlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2020, I electronically filed the foregoing ***Plaintiffs' Motion for Summary Judgment*** with the Clerk of the Court using the ECF system.

By: /s/ Roger L. Myers (P49186)

   MYERS & MYERS, PLLC
   Co-counsel for Plaintiffs
   915 N. Michigan Avenue, Suite 200
   Howell, Michigan 48843
   (517) 540-1700
   rmyers@myers2law.com

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

OAKLAND TACTICAL SUPPLY, LLC,     )
JASON RAINES, MATTHEW REMENAR,   )
SCOTT FRESH, RONALD PENROD, AND  )
EDWARD GEORGE DIMITROFF,       )
                                          )
           Plaintiffs,         )
                                         )Case No. 18-cv-13443-BAF-DRG
      v.                        )Honorable Bernard A. Friedman
                                         )
HOWELL TOWNSHIP,            )
a Michigan general law township,    )
                                         )
           Defendant.       )
_____/

Roger L. Myers (P49186)
MYERS & MYERS, PLLC
Attorneys for Plaintiffs
915 N. Michigan Avenue, Suite 200
Howell, Michigan 48843
(517) 540-1700
rmyers@myers2law.com

Martha A. Dean, (admitted 12/06/18)
LAW OFFICES OF MARTHA A. DEAN, LLC
Attorneys for Plaintiffs
144 Reverknolls
Avon, CT 06001
mdean@mdeanlaw.com

_____/

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ........................................................................ iii

I.   SUMMARY OF ARGUMENT ................................................................1

II.  FACTUAL BACKGROUND ..................................................................2

III. STANDARD OF REVIEW ....................................................................3

IV.  THE SECOND AMENDMENT ..............................................................4

V.   ARGUMENT .........................................................................................7

  A.  The Township's Ban on Outdoor Ranges is Patently Unconstitutional  and Requires No Interest-Balancing Analysis to Find it So ..............................7

    1.   The right to practice and train in the use of firearms is an inherent right that is protected by the Second Amendment....................................................7

    2.   Plaintiffs' right to practice and train in the use of their firearms has been severely infringed and the Zoning Ordinance should be enjoined ........................10

  B.  The Township's Ban on Outdoor Shooting Ranges is Unconstitutional Under Any Level of Heightened Scrutiny Analysis, as the Township Provided No Justification..................................................................................15

    1.   Heightened scrutiny is required .....................................................15

    2.   Township has no justification for its outdoor shooting range ban................18

VI.  CONCLUSION ....................................................................................19

# INDEX OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby Inc*., 477 U.S. 242 (1986)......................................................4

*Andrews v. State*, 50 Tenn. 165 (1871)............................................................................6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). ..............................................................4

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................4, 5, 6, 8, 10, 11, 12, 19

*Ezell v. City of Chicago (Ezell I)*, 651 F.3d 684 (7th Cir. 2011) ..............6, 8, 16, 18, 19

*Ezell v. City of Chicago (Ezell II)*, 846 F.3d 888 (7th Cir. 2017)...............7, 8, 9, 16, 17

*Kendall v. Hoover Co.*, 751 F.2d 171 (6th Cir. 1984) .....................................................4

*McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192 (6th Cir. 1996) ..................4

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) .......................................................6

*Muscarello* v. *United States*, 524 U.S. 125 (1998)..........................................................5

*Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555 (1980) ......................................8

*Schad v. Mt. Ephraim*, 452 U.S. 61 (1981)...................................................................12

*Susan B. Anthony List v. Driehaus*, 814 F.3d 466 (6th Cir. 2016). ..............................16

*Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016) (en banc)...7, 8, 16, 17, 18, 19

*United States v. Greeno*, 679 F.3d 510 (6th Cir. 2012)................................................16

## Statutes

MCL § 691 ......................................................................................................................10

## Other Authorities

1963 ADVISORY NOTES TO FED. R. CIV. P. 56..................................................................4

BLACK'S LAW DICTIONARY (6th Ed. 1998) .............................................................5

**Rules**

Federal Rule of Civil Procedure 56(c) ............................................................3

**Constitutional Provisions**

U.S. Const. amend. II ....................................................................................4

## I.   <u>SUMMARY OF ARGUMENT</u>

Howell Township's Zoning Ordinance has created an effective ban on outdoor shooting ranges that prevents Plaintiffs from exercising their Second Amendment rights, which include the right to be proficient in the use of firearms. Plaintiff Oakland Tactical Supply, LLC ("Oakland") has taken significant steps toward building an outdoor shooting range facility for its members and the public on its 352 acre property in Howell Township ("Township"), and incurred substantial costs, but these efforts have been thwarted by the Township under the Zoning Ordinance.

Without the proposed range, Plaintiff Oakland's members, patrons and members of the public, including the individual Plaintiffs: Remenar, Fresh, Raines, Penrod, and Dimitroff, cannot exercise their Second Amendment right to gain proficiency in the use of their firearms, such as rifles, shotguns, and handguns, as such practice includes target distances, active shooter shooting disciplines, and long-distance precision shooting, all of which require an outdoor range.

Plaintiff Oakland's shooting range facility would provide a safe place for the Plaintiffs and the general public to practice and train with their lawful firearms, and allow them to educate the next generation to be able to do the same. Summary judgment for Plaintiffs is appropriate under these facts because the Zoning Ordinance, on its face, creates an unconstitutional ban on outdoor shooting ranges.

1

## II.    **FACTUAL BACKGROUND**

Plaintiff Oakland is attempting to build an outdoor shooting range facility for both public and private use on its approximately 352 acre property on Fleming Road, Howell Township ("the "Property"). (M. Paige Aff. ¶ 9.) After an extensive search for an appropriate site for the planned range in southeastern Michigan, Oakland identified the Property as uniquely-suited to the development of a safe and well-run outdoor shooting range facility. (*Id.* ¶ 10.)

The Property is a mile long and a half mile wide, consisting mostly of open and extensive rolling fields and a couple of interior excavated areas, all of which are separated from the surrounding rural-agricultural land and scattered residences by an onsite internal buffer area of forest land and forested wetlands. (*Id.* ¶ 11.) The most recent use of the property was for rock quarrying operations and agriculture, which operations added large earthen perimeter berms and a 6' high chain link perimeter fence around the Property. (*Id.* ¶¶ 11,12.)

Oakland's planned range facility will be open to the public and will include a rifle range with targets set at distances up to 100 yards, a shot gun range with aerial targets, a precision shooting range of at least 1,000 yards, a handgun range up to 50 yards, and multiple three-sided berm defensive/offensive action-shooting bays (pistol, rifle, shotgun) for IDPA and similar shooting disciplines and related amenities. (*Id.* ¶ 14.)  The planned shooting range will also provide the public with Civilian

2

Marksmanship Program opportunities as well as opportunities to complete the training required by the State of Michigan for a Concealed Pistol License ("CPL"). (*Id*. ¶¶ 14, 15.)

Since 2017, Oakland's plans to develop an outdoor shooting range facility have been blocked by the Howell Township Zoning Ordinance. (*Id*. ¶ 34.) The Zoning Ordinance prohibits outdoor shooting ranges from being sited in Howell Township, despite appearing to allow them by including "rifle ranges" in the definitions. (Statement of Facts ¶¶ 2, 17.)

Two of the individual Plaintiffs live within Howell Township and the other three live in the general vicinity. (*Id*. ¶¶ 7-13.) They are all owners of common, lawful firearms who are unable to engage in the training and practice necessary to become and remain proficient in the use of their firearms, or to train the next generation in the use of such firearms, because appropriate ranges for their firearms and shooting disciplines are not available to them. (*Id*.) The individual Plaintiffs would use the proposed Oakland range facility for regular training and practice if Howell Township allowed it to open. (*Id*.)

## III.   **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) sets forth the standard of review for summary judgment motions.  A motion for summary judgment may be granted if the

pleadings, depositions, answers to interrogatories, and admissions on file, together
with affidavits, if any, show no genuine issues as to any material fact and that the
moving party is entitled to judgment as a matter of law. *See McCafferty v. McCafferty
(In re McCafferty)*, 96 F.3d 192, 195 (6th Cir. 1996) (*citing Celotex Corp. v. Catrett*,
477 U.S. 317, 322 (1986)). The very mission of the summary judgment procedure is to
pierce the pleadings and to assess the proof in order to see whether there is a genuine
need for trial. 1963 ADVISORY NOTES TO FED. R. CIV. P. 56.

A fact is material for purposes of summary judgment where proof of that fact
would have the effect of establishing or refuting an essential element of the cause of
action or a defense advanced by the parties. *See Kendall v. Hoover Co.*, 751 F.2d 171,
174 (6th Cir. 1984). An issue of material fact is genuine if the evidence is such that a
reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty
Lobby Inc.*, 477 U.S. 242, 248 (1986).


**IV.**    <u>**THE SECOND AMENDMENT**</u>

The Second Amendment provides: "A well-regulated Militia, being necessary to
the security of a free State, the right of the people to keep and bear Arms, shall not be
infringed." U.S. Const. amend. II. In 2008, in the seminal Second Amendment case of
*District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court struck down
the District of Columbia's handgun ban and requirement that lawfully-owned firearms

4

be kept "unloaded and disassembled or bound by a trigger lock" as it represented a significant infringement of core rights secured by the Second Amendment. *Heller*, 554 U.S. at 574.  The Court recognized that the Second Amendment protects an individual's right to possess a firearm, unconnected with service in a militia, for traditionally lawful purposes, such as self-defense within the home. *Heller*, 554 U.S. at 624.

To "bear arms," the Court states, is to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and *ready for* offensive or defensive action in a case of conflict with another person." *Id*. at 584 (emphasis added) *quoting Muscarello* v. *United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting); BLACK'S LAW DICTIONARY at 214 (6th Ed. 1998).  Early "Americans valued the ancient right [to keep and bear arms] . . . for self-defense *and hunting*." *Heller*, 554 U.S. at 599 (emphasis added).  *See id*. at 624 ("lawful purposes like self-defense").  The majority's decision secures a right to arms for "self-defense, *recreation,* and other *lawful purposes*." *Id.* at 676 n.38 (Stevens, J., dissenting) (emphasis added); *id.* at 706 (Breyer, J., dissenting).

The right to own lawful firearms is part of a bundle of inherent rights secured by the Second Amendment.  For example, "[t]he Constitution secures the right of the people to keep and bear arms . . . . [and] a citizen who keeps a gun or pistol under judicious precautions, *practises* (sic) in *safe places* the use of it, and in due time teaches his sons to do the same, exercises his individual right." *Id.* at 619 (citation

5

omitted) (emphasis added). The Court clarifies that "to bear arms implies something more than the mere keeping; it implies *the learning to handle and use them in a way that makes those who keep them ready for their efficient use*; in other words, it implies the right to meet for voluntary discipline in arms . . ." *Id.* at 617-18 (emphasis added, citation omitted).[1]  Thus, the Supreme Court recognizes in *Heller* that the right to practice with lawful firearms at a shooting range is at the very core of the rights secured by the Second Amendment.

Shortly after deciding *Heller* in 2008, the Supreme Court held in *McDonald v. City of Chicago*, 561 U.S. 742 (2010) that the Second Amendment is incorporated under the Fourteenth Amendment, and thus protects the rights secured by the Second Amendment from infringement by state and local governments.

One year later, in 2011, the United States Court of Appeals for the Seventh Circuit ("7th Circuit"), relying heavily on *Heller,* enjoined Chicago from implementing a city-wide ban on shooting ranges in the case *Ezell v. City of Chicago ("Ezell I")*, 651 F.3d 684 (7th Cir. 2011).

In 2016, the United States Court of Appeals for the Sixth Circuit ("6th Circuit") was asked to decide the constitutionality of a presumptively lawful restriction on

---

[1] "[T]he right to keep arms involves, necessarily, the right to use such arms for all the ordinary purposes, and in all the ordinary modes usual in the country, and to which arms are adapted . . . ." *Heller,* 554 U.S. at 614, quoting *Andrews v. State*, 50 Tenn. 165, 178 (1871).  See *Andrews*, *id*. ("the right to keep arms for this purpose involves the right to practice their use").

firearms possession by a small subset of the general population (the mentally ill) in

*Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 699 (6th Cir. 2016) (en banc).

*Tyler* confirms that the same analytical approach used in *Ezell I* is to be used in the 6th

Circuit: first, the court requires the government to bear the initial burden of

establishing that the "conduct at issue is categorically unprotected;" and, second, if the

government cannot meet its burden, it is required to demonstrate that it could "justify[]

the law under a heightened form of scrutiny." *Id.* at 686.

Recently in 2017, in *Ezell v. City of Chicago (Ezell II)*, 846 F.3d 888 (7th Cir.

2017), the Seventh Circuit was asked to revisit Chicago's newly-adopted zoning

policies regulating the siting of shooting ranges. The court found that the zoning

scheme at issue imposed such significant burdens on core rights (i.e. the right to

practice and train with firearms at a range) that it amounted to an effective ban on

shooting ranges. *Id*. at 890-893.  Once again, without proper justification for the

zoning scheme, the appellate court struck down the offending law.

## V.   ARGUMENT

### A.   The Township's Ban on Outdoor Ranges is Patently Unconstitutional and Requires No Interest-Balancing Analysis to Find it So

#### 1.   The right to practice and train in the use of firearms is an inherent right that is protected by the Second Amendment

On summary judgment in a Second Amendment challenge, the initial

determination is whether the Second Amendment right at issue was historically

7

understood to be protected at the time the Second Amendment was ratified. *Tyler*, 837 F.3d at 688. The government bears the burden of establishing that the right is unprotected. *Id.* It is well-understood that certain unarticulated rights are implicit in enumerated guarantees of fundamental rights, even though not expressly guaranteed, and they have been recognized by the Supreme Court as indispensable to the enjoyment of rights explicitly defined. *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555, 579-80 (1980). As the Supreme Court in *Heller* and the Seventh Circuit Court of Appeals in the *Ezell cases* make clear, the right to practice shooting lawful firearms and become proficient in their use and handling is at the very heart of the right to bear arms, as it is inherent in the rights protected. The Constitution secures the "right of …a citizen who keeps a gun or pistol … [to] practi[c]e[] *in safe places*…." *Heller*, 554 U.S. at 619 (citation omitted) (emphasis added). It is understood that "the right to bear arms implies …*learning to handle and use* [lawful firearms]. . . ." *Id.* at 617-18 (emphasis added, citation omitted). Target shooting at a shooting range is obviously the exercise of the right to practice with a firearm.

In *Ezell II*, the Seventh Circuit affirms its prior analysis in *Ezell I*, citing *Heller* extensively on the Constitutional protection afforded citizens to exercise their right to practice with firearms at a shooting range, stating:

> [T]he core individual right of armed defense—as recognized in
> *Heller* and incorporated against the states in *McDonald*—includes
> a *corresponding right to acquire and maintain proficiency in*
> *firearm use through target practice at a range.* We explained [in
> *Ezell I*] that the core right to possess firearms for protection

8

"wouldn't mean much without the training and practice that make it effective." We noted that *Heller* itself supports this understanding. Finally, we held that the City had failed to establish that target practice is wholly unprotected as a matter of history and legal tradition in the founding era or when the Fourteenth Amendment was ratified.

*Ezell II*, 846 F.3d at 892 (internal citations omitted).

From the founding of this country to this day, the promotion of proficiency with firearms, known as "civilian marksmanship," has been and continues to be a public policy priority in the United States. Such promotion of citizens' firearms proficiency continues to this day through the modern implementation of the Civilian Marksmanship Program via the federally-chartered Corporation for the Promotion of Rifle Practice and Firearms Safety. (Statement of Facts ¶ 4.) The Civilian Marksmanship Program is chartered to instruct citizens in marksmanship, promote practice and safety, and conduct competitions, as proficient use of firearms promotes public safety. (*Id*. ¶ 4.)

The State of Michigan, like the other states, recognizes the value of, and promotes through public policy, the development of firearms training and proficiency in the use of firearms. (*Id*. ¶¶ 5, 6.) Such promotion includes, but is not limited to, mandatory training on a firing range to obtain a Concealed Pistol License ("CPL"), developing public shooting ranges, and funding improvements to shooting ranges in the State of Michigan. (*Id*.)

Michigan's Sport Shooting Ranges Act, MCL § 691.1541, *et seq.*, demonstrates that ranges are supported by the public policy of the State.  (*Id*. ¶ 6.) The Act allows the continued operation of ranges that were in existence prior to the enactment of inconsistent local ordinances. MCL § 691.1542a.  While the Act does not apply here to Oakland's proposed range facility, the Act further provides: "Except as otherwise provided in this act, this act does not prohibit a local unit of government from regulating the location, use, operation, safety, and construction of a sport shooting range." MCL § 691.1543.  These provisions provide clear expressions of the premise that a locality may "regulate," but not prohibit, the siting of a range.

Following *Heller* and the *Ezell* cases, it is uncontroverted that the Second Amendment protects the right to practice and train in the use of lawful firearms at a shooting range.

> ## 2. Plaintiffs' right to practice and train in the use of their firearms has been severely infringed and the Zoning Ordinance should be enjoined

In the present case, the Township's Zoning Ordinance severely infringes Plaintiffs' Second Amendment rights, namely the right of citizens to practice and train with their lawful firearms, as it prohibits the siting of an outdoor shooting range within Howell Township. (Statement of Facts ¶¶ 2, 17.)   The Township's effective ban on outdoor shooting ranges prevents Oakland from using its 352 acre property in the Howell Township to open its planned outdoor range facility. (*Id.* ¶ 15.)  As a result,

Plaintiffs' right to practice and train with firearms and in training disciplines that require an outdoor range is severely infringed. (*Id.* ¶¶ 7-17.)

*Heller* states that courts have no discretion to engage in a "judge-empowering 'interest-balancing inquiry'" where core rights protected by the Second Amendment have been significantly curtailed. *Heller*, 554 U.S. at 634. In the present case, there is no question that the bundle of rights secured by the Second Amendment includes the right to practice and train at a shooting range to gain proficiency in the use of lawful firearms. Shooting ranges provide an appropriate location for historically-protected activities at the core of the rights protected by the Second Amendment. As such, any sweeping prohibition such as the Township's on outdoor shooting ranges within its borders presents the type of un-nuanced factual scenario that the Supreme Court was confronted with in *Heller*, where it decided the case without a balancing test or any scrutiny analysis.

*Heller* took a categorical approach and held the Washington, DC handgun ban to be invalid "[u]nder *any of the standards of scrutiny* that we have applied to enumerated constitutional rights . . . ." *Heller,* 554 U.S. at 628-29 (emphasis added).  The Court rejected rational basis analysis, *id*. at 629 n.27, as well as Justice Breyer's proposed "judge-empowering 'interest-balancing inquiry' that 'asks whether the statute burdens

a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests.'" *Id*. at 634.[2]

Instead of the dissent's use of interest-balancing focused reliance on a committee report and empirical studies, *Heller* based its holding solidly on the enumerated right:

> We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach. The very enumeration of the right takes out of the hands of government – even the Third Branch of Government – the power to decide on a case-by-case basis whether the right is *really worth* insisting upon.

*Id*. at 634. (Emphasis added.) Constitutional limits restrain the exercise of the power of local governments to zone and control land use, when those powers infringe upon a protected liberty interest. *Schad v. Mt. Ephraim*, 452 U.S. 61, 68 (1981).

Here, the Township's Zoning Ordinance operates by proscription, allowing only those uses and activities that are specifically authorized. (Statement of Facts ¶ 1.)  In the case of outdoor shooting ranges, the Zoning Ordinance misleadingly creates the appearance of authorizing a single type of outdoor shooting range by including "rifle ranges" in its definition of "Open Air Business Uses" (*Id*. ¶ 2), but then fails to actually authorize Open Air Business Uses as a category in any zone.  (*Id*. ¶¶ 1-3.)

---

[2] Justice Breyer would have applied a standard under which "the Court normally defers to a legislature's empirical judgment in matters where a legislature is likely to have greater expertise and greater institutional factfinding capacity."  *Id*. at 690 (Breyer, J., dissenting).

While the Township's Zoning Ordinance does authorize specified subsets of  Open Air Business Uses, such as golf courses, golf driving ranges, active recreation at neighborhood parks and community parks, and playgrounds, which are permitted as of right in multiple zoning districts as long as certain minimal conditions are met, pursuant to Section 16.18, "rifle ranges" are not among those authorized. (*Id.* ¶ 3.) Neither the Zoning Ordinance nor any other public record provides justification for the Township's prohibition on outdoor shooting (*Id.*)

In short, the Township has severely infringed on Plaintiffs' right to practice and train with firearms and in shooting disciplines that require an outdoor range.  As a result of the Township's Zoning Ordinance, Oakland is unable to site, construct, and operate an outdoor shooting range within the Township to serve the needs of its members, the individual Plaintiffs and the general public. (*Id.* ¶¶ 15,17.)

Outdoor and indoor shooting ranges provide different practice and training environments for shooters. (*Id.* ¶ 16.) Target for long guns such as hunting rifles, centerfire rifles, and shotguns are typically placed at distances of 50 yards and up to 1,000 yards or more, significantly farther than the 25-yard length of the local indoor range. (*Id.*) Environmental factors are import real world conditions that cannot occur in indoor ranges. (*Id.*) Training with shotguns to hit moving aerial targets in an indoor range is not allowed in any indoor range in Michigan. (*Id.*) Finally, self-defense simulations practicing active shooter skills are not allowed in indoor ranges in Michigan. (*Id.*)

13

Plaintiff Ronald Penrod, a resident of Howell Township, is currently unable to practice target shooting at available outdoor range locations due to the travel time involved and his heavy work schedule. (*Id.* ¶ 7.) Mr. Penrod would use the outdoor shooting range planned by Oakland to practice target shooting multiple times per week with pistols, shotguns, and rifles. (*Id.* ¶¶ 7,9. )

Plaintiff Edward Dimitroff, a Howell Township resident, is unable to practice with his shotguns or with rifles because there are no outdoor ranges that allow shooting with long guns within a feasible driving distance from his home.  (*Id.* ¶ 10.)  Mr. Dimitroff would use the outdoor shooting range planned by Oakland to practice target shooting with handguns, shotguns, and rifles, as well as teach his children to use firearms. (*Id.*)

Plaintiff Scott Fresh is currently unable to become proficient in the use of his firearms for precision shooting due to the excessive travel time of 4.5 hours to reach a location where such practice is possible. (Statement of Facts ¶ 11.)  Mr. Fresh plans to practice shooting at Oakland's shooting range facility in Howell Township if it is built. (*Id.*)

Plaintiff Jason Raines has had multiple back surgeries, but is able to continue to engage in the shooting sports. (*Id.* ¶ 12.) Mr. Raines is unable to participate in long-range competitive shooting, as the travel distance to available ranges is too far to travel with his back injury. (*Id.*)  If the Oakland outdoor shooting range were constructed in

14

Howell Township, Mr. Raines would practice target shooting and train future generations in the use of firearms at Oakland's range.  (*Id.*)

Plaintiff Matthew Remenar currently practices precision shooting with his firearms only about once per year due to the excessive travel and setup time involved and lack of facilities. (*Id*. ¶ 13.)  Mr. Remenar would use Oakland's shooting range to practice target shooting with his firearms at varying distances if it were allowed in Howell Township. (*Id.*)

In short, the Township's ban on outdoor ranges is patently unconstitutional and requires no interest-balancing analysis to find it so. The Zoning Ordinance severely infringes Plaintiffs Second Amendment right to practice and train at an outdoor shooting range. As a result, Plaintiffs are entitled to summary judgment against the Township.

**B.    The Township's Ban on Outdoor Shooting Ranges is Unconstitutional Under Any Level of Heightened Scrutiny Analysis, as the Township Provided No Justification**

### 1.  Heightened scrutiny is required

Plaintiffs in the present case maintain that the analysis in *Heller* precludes a scrutiny approach to a constitutional review of the Howell Township ban on outdoor shooting ranges, as the Ordinance severely infringes citizens Second Amendment right to become proficient in the use of their firearms.  (Statement of Facts ¶¶ 7-18.) However, even if this court were to engage in a scrutiny analysis of the Zoning Ordinance, *Tyler* and the *Ezell* cases require some form of heightened scrutiny.  As the

Township's prohibition on the siting of outdoor shooting ranges is a severe

infringement of Plaintiffs' Second Amendment rights to practice shooting lawful

firearms, the challenged law is not entitled to a presumption of lawfulness, in contrast

with the facts in *Tyler, infra*. Thus, any scrutiny analysis here must apply a heightened

form of scrutiny, placing the burden on the Township to justify it restrictions. *Tyler*,

837 F.3d at 690.  *See United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)

(recognizing rejection of rational basis review by Supreme Court in *Heller*).  Where a

scrutiny analysis is applied, the appropriate level of heightened scrutiny is determined

by "(1) how close the law comes to the core of the Second Amendment right, and (2)

the severity of the law's burden on the right." *Tyler*, 837 F.3d at 690 (citations

omitted). In 2011, in *Ezell I, supra,* the Seventh Circuit, citing heavily to *Heller*,

applied a "rigorous showing," "if not quite 'strict scrutiny,'"[3] under which "the City

bears the burden of establishing a strong public-interest justification for its ban on

range training . . . ." *Ezell I*, 651 F.3d at 708.  Striking down Chicago's city-wide ban

on shooting ranges, the Seventh Circuit embraced a heightened level of scrutiny where

the infringement is significant and the rights at issue are at the core of those protected

by the Second Amendment.  *Id.*  In *Ezell II,* the Seventh Circuit struck down a zoning

scheme that amounted to an 'effective ban' on shooting ranges throughout the City of

---

[3] "Laws subject to strict scrutiny are presumptively unconstitutional and can only
survive if they (1) serve a compelling state interest and (2) are narrowly tailored to
achieve that interest." *Susan B. Anthony List v. Driehaus*, 814 F.3d 466 (6th Cir.
2016).

Chicago. *Ezell II,* 846 F.3d at 890.  Once again, the Seventh Circuit employed the two-part approach for determining the appropriate level of scrutiny, deciding upon the use of a heightened form of scrutiny where the curtailment of citizens' rights is significant and the rights curtailed are at the core of those protected by the Second Amendment. *Id.* at 892-94.

As described in more detail in Section V.A.2, the Township has severely infringed Plaintiffs' Second Amendment right to train and practice in the use of their firearms.  Oakland would construct an outdoor shooting range in the Township if not prevented by the Zoning Ordinance. (Statement of Facts ¶ 15.) The individual Plaintiffs, Mr. Fresh, Mr. Raines, Mr. Remenar, Mr. Penrod, and Mr. Dimitroff are all prevented from training and practicing by the lack of available outdoor shooting ranges. (*Id.* ¶ 7-13.) The Plaintiffs would all use Oakland's outdoor shooting range if it were constructed in the Township.  (Statement of Facts ¶ 18.)

As to the first part of the *Tyler* analysis (whether the law infringes a right at the core of those protected), *Heller* and the *Ezell* cases are unequivocal that the right to practice and train at a shooting range is at the very core of the inherent rights protected by the Second Amendment.  Here, the individual Plaintiffs are unable to practice at an appropriate shooting range for their firearms due to the lack of an outdoor range suitable for their use.

As to the second part of the *Tyler* analysis (the severity of the law's burden on the right), the Plaintiffs are unable train and practice with their firearms due to the

17

Township's effective ban on outdoor shooting ranges. This is a severe infringement of

Plaintiffs core Second Amendment rights.

Therefore, if any scrutiny analysis is required on such stark facts, *Tyler's* two-

prong analysis requires heightened scrutiny.

### 2.  Township has no justification for its outdoor shooting range ban

The heightened form of scrutiny adopted by the Seventh Circuit in *Ezell I* places

a substantial burden on the Township to justify its restrictions on Plaintiffs' Second

Amendment rights*:*

> the City bears the burden of establishing a ***strong public-interest
> justification*** for its ban on range training: The City must establish
> a ***close fit*** between the range ban and the actual public interests it
> serves, and also that the ***public's interests are strong enough to
> justify so substantial an encumbrance*** on individual Second
> Amendment rights. Stated differently, the City must demonstrate
> that civilian target practice at a firing range creates such genuine
> and serious risks to public safety that prohibiting range training
> throughout the city is justified.

*Ezell I*, 651 F.3d at 708-09. (Emphasis added.)

Under the heightened form of scrutiny employed in *Ezell I*, the Township bears

the burden at the outset of establishing the existence of a strong public interest

justification for its Zoning Ordinance. *Ezell I*, 651 F.3d at 709.  In establishing its

strong public interest justification, the Township may not rely on speculative concerns about outdoor shooting ranges. *See id*.[4]

Yet, in the present case, the public record and the Zoning Ordinance not only fail to provide a strong justification; they provide no justification for the Township's prohibition on outdoor shooting ranges. (Statement of Facts ¶¶ 1-3).

As the public record does not disclose any justification for its ban on the siting or construction of outdoor shooting ranges within the Township, let alone a strong justification, no further analysis is required to determine whether this fit is appropriate or the justification is strong enough. Therefore, summary judgment in favor of Plaintiffs is appropriate even under a scrutiny analysis approach.

## VI.   <u>CONCLUSION</u>

The Township has infringed rights held by Plaintiffs that are at the core of the Second Amendment. The infringement is severe and there is no government justification. On these facts, the Township's ban on outdoor shooting ranges is patently unconstitutional.  Whether the court follows *Heller* and finds the infringement so obvious as to not engage in a scrutiny analysis or analyzes the infringement under

---

[4] Even under the lesser burden of intermediate scrutiny established in *Tyler* for presumptively lawful restrictions on a small subset of the population (the mentally ill), the government is required to establish a reasonable fit between the justification and the law's restriction with evidence, not mere anecdote and supposition. *Tyler*, 837 F.3d at 694.

heightened scrutiny as in the *Ezell* cases and suggested by *Tyler,* the Township cannot meet its burdens and Plaintiffs are entitled to summary judgment.

Accordingly, Plaintiffs respectfully request that the court declare the Zoning Ordinance unconstitutional as it regards Plaintiff Oakland's proposed outdoor shooting range facility and shooting ranges, enjoin the enforcement of the Zoning Ordinance against Oakland, and order the issuance of a building permit to Oakland, upon satisfaction of standard conditions for the same.  Plaintiffs also request that the court schedule a hearing on damages and any other appropriate relief.

Dated:  June 19, 2020

Respectfully submitted,

MYERS & MYERS, PLLC
Attorneys for Plaintiffs

By: /s/ Roger L. Myers
Roger L. Myers (P49186)
915 N. Michigan Avenue, Suite 200
Howell, MI 48843
(517) 540-1700
rmyers@myers2law.com

/s/ Martha A. Dean
Martha A. Dean, Esq. (Admitted 12/6/18)
**Law Offices of Martha A. Dean, LLC**
144 Reverknolls
Avon, CT 06001
Phone: 860-676-0033
Fax: 860-676-1112
mdean@mdeanlaw.com

20

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2020, I electronically filed the foregoing ***Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment*** with the Clerk of the Court using the ECF system.


By:   /s/ Roger L. Myers (P49186)

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

OAKLAND TACTICAL SUPPLY, LLC,           )
JASON RAINES, MATTHEW REMENAR,          )
SCOTT FRESH, RONALD PENROD, AND         )
EDWARD GEORGE DIMITROFF,                )
                                        )
           Plaintiffs,                  )
                                        )Case No. 18-cv-13443-BAF-DRG
        v.                              )Honorable Bernard A. Friedman
                                        )
HOWELL TOWNSHIP,                        )
a Michigan general law township,        )
                                        )
           Defendant.                   )
_____/

Roger L. Myers (P49186)
MYERS & MYERS, PLLC
Attorneys for Plaintiffs
915 N. Michigan Avenue, Suite 200
Howell, Michigan 48843
(517) 540-1700
rmyers@myers2law.com

Martha A. Dean (admitted 12/06/18)
Co-Counsel for Plaintiffs
Law Offices of Martha A. Dean LLC
144 Reverknolls
Avon, CT 06001
mdean@mdeanlaw.com

_____/


# RULE 56 STATEMENT OF
# MATERIAL FACTS NOT IN DISPUTE

The following Statement of Material Facts Not In Dispute is provided in accordance with F.R.C.P. 56 and applicable local rules.

### Undisputed Facts as to Count I:
**Right to Keep & Bear Arms, U.S. Constitution, Amendments II & XIV**

**Howell Township Zoning Scheme**

1.    Howell Township adopted zoning regulations known as the Howell Township Zoning Ordinances on January 8, 1983 (the "Zoning Ordinance").[1] The Zoning Ordinance is a permissive zoning regulation, which prohibits any use not specifically listed:

> "Uses are permitted by right only if specifically listed as principal permitted uses in the various zoning districts or is similar to such listed uses. Accessory uses are permitted as listed in the various zoning districts or if similar to such listed uses, and if such uses are clearly incidental to the permitted principal uses. Special uses are permitted as listed or if similar to the listed special uses and if the required conditions are met."[2]

2.    The Zoning Ordinance explicitly references "rifle ranges" under the definition of "Open Air Business Uses"[3] but does not mention rifle ranges,

---

[1] March 2019. The regulations were adopted "pursuant to Public Act 110 of 2006 (MCLA 125.3101 - 125.3701), and insofar as it is applicable, Public Act 33 of 2008 (MCLA 125.3801 - 125.3885), as amended, of the State of Michigan." (Howell Township, Ord. No. 1 eff. Jan. 8, 1983, further amended by Ord. No. 202 eff. Dec. 21, 2006.) (Ex. 1, Zoning Ordinance, p. I-1.)

[2] (Ex. 1, Zoning Ordinance, p. III-3.)

[3] "Open Air Business Uses.  Open air business uses operated for profit substantially in the open air shall include such uses as the following: . . . (d) tennis courts, archery courts, shuffleboard, horseshoe courts, rifle ranges, miniature golf, golf driving range, children's amusement park or similar recreation uses (transient

specifically, or shooting ranges, generally, anywhere else in the Zoning

Ordinance.[4] The Zoning Ordinance does not allow the category "Open Air

Business Uses," either by right or as a special use, in any zone within Howell

Township.[5]

      3.     Certain categories of Open Air Business Uses are permitted in

multiple zoning districts pursuant to Section 16.18.[6] Section 16.18 permits golf

courses in AR, SFR, and MFR zoning districts, golf driving ranges in AR zoning

districts, active recreation at neighborhood parks and community parks in the AR,

SFR and MFR zoning districts, and playgrounds for outdoor activities in the AR,

SFR, and MFR zoning districts.[7]  None of these uses require a special use permit

so long as minimal conditions are met.[8] The Zoning Ordinance does not permit

shooting ranges, generally, or rifle ranges, specifically, as of right in any district in

Howell Township, and it provides no justification for this disparate treatment. [9]


**Federal and State Firearms Policy**

      4.     Recreational shooting is a traditional lawful use of firearms in the

---

or permanent)." Howell Township, Ord. No. 271 eff. Oct. 3, 2017. (Ex. 1, Zoning
Ordinance, pp. II-13.)
[4] Ex. 1, Zoning Ordinance.
[5] Ex. 1, Zoning Ordinance.
[6] Ex. 1, Zoning Ordinance, p. XVI-15.
[7] Ex. 1, Zoning Ordinance, p. XVI-15-16.
[8] *Id.*
[9] Ex. 1, Zoning Ordinance.

United States. The promotion of civilian marksmanship has been a priority throughout American history, continuing to this day through the modern implementation of the Civilian Marksmanship Program through the federally-chartered Corporation for the Promotion of Rifle Practice and Firearms Safety:[10]

> The functions of the Civilian Marksmanship Program are—(1) to instruct citizens of the United States in marksmanship; (2) to promote practice and safety in the use of firearms; (3) to conduct competitions in the use of firearms and to award trophies, prizes, badges, and other insignia to competitors; (4) to secure and account for firearms, ammunition, and other equipment for which the corporation is responsible; (5) to issue, loan, or sell firearms, ammunition, repair parts, and other supplies under sections 40731 and 40732 of this title; and (6) to procure necessary supplies and services to carry out the Program.[11]

5.      Familiarity with firearms, and proficiency in their use, promotes public safety.[12] The State of Michigan recognizes the value of, and promotes through public policy, the development of firearms training and proficiency in the

---

[10] 36 U.S.C. §§ 40701, et seq.

[11] 36 U.S.C § 40722.

[12] In recognition that familiarity with firearms proficiency and their use promotes public safety and reduces accidental shootings, including among youth, the Civilian Marksmanship Program "shall give priority to activities that benefit firearms safety, training, and competition for youth and that reach as many youth participants as possible." 36 U.S.C. § 40724. Accordingly, the CMP issues and loans rifles to affiliated organizations that provide firearms training to youth, including the Boy Scouts of America, 4-H clubs, the Future Farmers of America, and other youth-oriented organizations. 36 U.S.C. § 40731(a).

use of firearms.[13] Michigan residents wishing to lawfully possess handguns must

first obtain a Concealed Pistol License ("CPL").[14] An application for a CPL "must

include . . . (h) A certificate stating that the applicant has completed the training

course prescribed by this act."[15] The course must consist of "not less than 8 hours

of instructions and . . . (a) . . . certified by this state or a national or state firearms

training organization, . . . (b) The program provides at least 3 hours of instruction

on a firing range and requires firing at least 30 rounds of ammunition." [16]

      6.     The State of Michigan encourages the recreational use of firearms and

shooting ranges through policies that promote the development and use shooting

ranges.[17] The Michigan DNR receives federal grant monies, which it uses to

support improvements to shooting ranges throughout Michigan.[18] "The U.S. Fish

and Wildlife Service recently approved a total of $1.25 million over a five-year

---

[13] See, e,g., M.C.L. § 691.1542 (protecting shooting ranges from civil liability for noise).

[14] Mich. Comp. Laws § 28.422.

[15] Mich. Comp. Laws § 28.425b.

[16] Mich. Comp. Laws § 28.425j.

[17] MI DNR, https://www.michigan.gov/dnr/0,4570,7-350-79119_79149---,00.html, ("Our seven staffed shooting ranges in southern Michigan offer a fun, safe shooting environment for you and your friends and family. Staffed by customer-friendly and highly trained employees, our shooting ranges feature amenities like handgun, rifle, shotgun and archery ranges and restroom facilities.") (last accessed April 8, 2019).

[18] Michigan, "Federal funding boosts DNR's efforts to improve public shooting ranges throughout Michigan" (June 13, 2018), https://www.michigan.gov/som/0,4669,7-192-47796-470854--,00.html, (last accessed April 8, 2019).

period for the DNR to provide up to 75 percent of funding for improvements to

partner shooting ranges throughout Michigan."[19] The DNR's website refers to its

staffed ranges as a "fun, safe shooting environment for you and your friends and

family," the use of which it encourages.[20] Michigan's Sport Shooting Ranges Act

("Michigan Range Protection Act" or the "Act")[21] also demonstrates that ranges

are supported by the public policy of the State.  The Act allows the continued

operation of Michigan shooting ranges that were in existence prior to the

enactment of inconsistent local ordinances.[22] It provides further, "Except as

otherwise provided in this act, this act does not prohibit a local unit of government

from regulating the location, use, operation, safety, and construction of a sport

shooting range."[23] Oakland acquired rights to the Property several years ago for the

express purpose of operating its planned shooting range facility providing a safe

location for residents in the area to practice target shooting for self-defense and

other lawful purposes.[24]

---

[19] *Id.*

[20] Michigan DNR, Shooting Ranges, https://www.michigan.gov/dnr/0,4570,7-350-79119_79149---,00.html (last accessed April 8, 2019).

[21] MCL 691.1541 et seq.

[22] MCL §691.1542a.

[23] MCL §691.1543.

[24] *Id.,* par. 12.

**The Plaintiffs**

7.      Plaintiff Ronald Penrod lives in Howell Township, Michigan.[25]  He

resides in close proximity to the shooting range facility that Oakland proposes to

build on the Property.[26]  He is a firearms owner and was able to practice with his

firearms several times a week when he lived in another state near a shooting range.

He uses his shotguns and pistol for recreation as well as for self-defense.[27] He

would like to be able to practice at least a couple of times a week with a shotgun,

rifle and pistol, but currently there are no ranges where he can practice with these

firearms within a reasonable drive of his home in Howell Township.[28] His work

schedule does not leave sufficient time to travel more than 10-15 miles to reach a

shooting range and there are currently no ranges that allow him to practice with

each of his firearms within that distance.[29] In addition to practicing with his

firearms, he would like to participate in shooting matches with a shotgun on a

regular basis at an outdoor shooting range; however, he is unable to participate in

matches due to the lack of a publicly-accessible outdoor shooting range within a

reasonable drive of his home in Howell Township.[30]  If the shooting range facility

that Oakland plans to open on the Property were available, he would practice there

---

[25] Ex.9, Aff. R. Penrod.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*

at least a couple of times per week.[31]

8.      Mr. Penrod lives with his wife in a rural part of Howell Township with horses, and fear for their safety and the safety of their animals due to the sound of uncontrolled shooting occurring on other residents' properties around them.[32]  He is aware of two horses being hit accidentally by stray bullets in their area and of a man who was hit and killed, by a stray bullet from a .22 that travelled across a lake in a state where he resided previously.[33]  Given the amount of uncontrolled shooting on private property near his residence, he believes Oakland's proposed range facility would provide a valuable asset to him and to his neighbors and the greater community by providing a safe and controlled environment for practicing shooting in Howell Township.[34]

9.      The range facility that Oakland proposes to build would be approximately 3 miles from Mr. Penrod's residence and would be convenient for him for the purpose of practicing with shotguns, rifles and pistols recreationally as well as for self-defense and other lawful purposes.[35] He would engage in firearms practice and matches on a regular basis for training and competition if a suitable

---

[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*

shooting range were made available to him in Howell Township.[36]

     10.    Plaintiff Edward George Dimitroff lives in Howell Township, Michigan.[37] Mr. Dimitroff resides in close proximity to the shooting range facility that Oakland proposes to build on the Property, approximately a 6 mile drive from the Property entrance.[38] He is a firearms owner and is unable to practice with his shotguns or with rifles because there are no outdoor ranges that allow shooting with long guns within a feasible driving distance from his home.[39] He drives 1 to 1.5 hours one way to work in Livonia, Michigan; however, he is unable to practice shooting at any of the ranges along the way or near his work because of restrictions in place by his employer.[40] His employer does not allow firearms in cars parked at his place of employment and so using these ranges is not an option.[41] Mr. Dimitroff works 10-12 hours per day, seven days per week leaving him no time to travel to the nearest range, the Island Lake public range, which is about a 1 to 1.5 hour round trip drive from his home.[42]  He would practice with shotguns, handguns, and rifles at an outdoor range, but practicing is impractical due to the

---

[36] *Id.*
[37] Ex.15, Aff. E. Dimitroff.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*

travel time.[43] He currently owns a handgun and a shot gun, both of which are kept for recreation and self-defense purposes, and considers practicing with his firearms critical for maintaining proficiency.[44] He also would teach his three children (now in their twenties), how to use firearms, but is unable due to the lack of access to a range, such as that proposed by Oakland that would allow practice with each of the types of firearms that he owns.[45]  In addition, he would like to take up long range precision shooting with a rifle, but is unable to do so due to the lack of access to a range with facilities for this type of shooting.[46]  If an appropriate shooting range facility, such as the range facility proposed by Oakland, were allowed to open in Howell Township, he would practice there regularly each week with handguns, shotguns and rifles for both recreational and self-defense purposes and to teach his children how to use firearms.[47]

11.    Plaintiff Scott Fresh resides in Livonia, Michigan and would like to participate in long-range competitive target shooting.[48]  Currently, Mr. Fresh must travel 4.5 hours to be able to practice long distance shooting at a shooting range.[49] This travel time is too great for Mr. Fresh, and so he is unable to train in the

---

[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] Ex. 11, Aff. S. Fresh.
[49] *Id.*

proficient use of long-range shooting with firearms.[50]  The range that Oakland

wishes to open would be convenient for him for this purpose as well as for

practicing target shooting at shorter distances.[51]  Mr. Fresh plans to practice

shooting at Oakland's shooting range facility in Howell Township if it is built. [52]

12.     Plaintiff Jason Raines resides in Oceola Township, Michigan.[53]  He

has had multiple surgeries due to back injuries and engaging in the shooting sports

is one of the few competitive activities in which he can still engage.[54] Mr. Raines

would like to participate in long-range competitive shooting, but there are currently

no feasible locations, as travelling any distance takes a toll on his back injuries.[55]

Mr. Raines is also a hunter and would like to improve his long-range shooting

skills to increase his ability to make a humane kill when hunting.[56]  If the Oakland

facility were available, Mr. Raines would train there and work to become a long-

range shooting instructor so that he can train future generations in long-range

shooting.[57]  The range that Oakland wishes to open would be convenient for him

for these purposes as well as for practicing target shooting for self-defense and

---

[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] Ex. 12, Aff. J. Raines.
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*

other lawful purposes.[58] Mr. Raines would engage in long-range target shooting and other shooting activities within Howell Township on a regular basis for training and competition if the planned shooting range facility were opened in Howell Township.[59]

13.     Plaintiff Matthew Remenar lives in Rochester Hills, Michigan.[60] Mr. Remenar has engaged in long-range target shooting over the past seven years and would like to compete in long-range shooting competitions.[61] To practice, he must currently travel 1.5 hours to vacant State land that allows long-range shooting.[62] Once there, Mr. Remenar and his friends must setup the targets on their own and then hike a significant distance from the firing line to the target location to change targets and tally scores.[63] Due to the distance, difficulty, and time required to access the land, set up, and practice, Mr. Remenar only practices long-range shooting about once a year.[64] If he were to travel to a developed shooting range to practice long-range shooting, he must currently drive more than three hours.[65] The lack of a long-distance shooting range within a reasonable driving distance is a significant impediment to Mr. Remenar's ability to practice and become proficient

---

[58] *Id.*
[59] *Id.*
[60] Ex.13, Aff. M. Remenar.
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.*

with his firearms and this prevents him from participating in competitive long-range shooting.[66] The range that Oakland plans to open at the Property would be convenient for Mr. Remenar, and he would use it to practice long-range shooting as well as shooting at shorter distances.[67] He would engage in long-range target shooting and other shooting activities within Howell Township on a regular basis for training and competition if the planned shooting range facility were opened in Howell Township.[68]

14.    In 2017, Oakland's managing member, Michael Paige, sought to obtain a permit from the Township that would allow the siting of a shooting range facility at Oakland's Property.[69] Mr. Paige was informed by the Township's zoning staff  that a permit to open a shooting range facility on the Property was not available because the Agricultural Residential District ("AR District") does not allow Open Air Business Uses, shooting ranges, or rifle ranges.[70]

15.    Oakland has a property interest in approximately 352 acres of land formerly used for rock quarrying operations on Fleming Road in Howell Township.[71] If allowed to do so under the Zoning Ordinance, Oakland would construct, open, and operate a shooting range facility within Howell Township to

---

[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] Ex. 10, Aff. M. Paige, par. 29.
[70] *Id.*, par. 30.
[71] *Id.,* pars. 9,33.

further its purposes of promoting the shooting sports and self-defense, educating the public about firearms, training individuals to become better and safer shooters, enabling individuals to comply with training requirements such as those enacted by the State of Michigan, and to generally serve the shooting training needs of its members and the public and educate the next generation in firearms use and safety.[72]

16.      Outdoor shooting ranges, such as the outdoor range facility proposed by Oakland, serve different training and practice needs for training and practice with lawful firearms than do indoor shooting ranges.[73]  For example, target practice and training with firearms such as hunting rifles, centerfire rifles, shotguns, etc. typically involve target shooting distances at 50 yards, 100 yards, 200 yards to over 1,000 yards, all of which distances are much longer than the 25 yard indoor range in the City of Howell.[74] Also, gaining proficiency with hunting rifles, centerfire rifles and shotguns involves training in conditions where the shooter experiences and must adjust for the effect of environmental factors such as wind, temperature and humidity on a fired bullet's trajectory. This type of training and practice necessarily occur in an outdoor setting.[75]  In addition, training with shotguns and the type of moving aerial targets typically used for shotgun practice

---

[72] *Id.*, par. 33.
[73] *Id.*, par. 24.
[74] *Id*., par. 25.
[75] *Id*., par. 26.

must also be conducted outdoors, as such targets and shooting are not allowed at indoor ranges.[76]  And, finally, while lessons are available at some indoor ranges in the shooting disciplines that involve full active shooter competitive disciplines with hand guns in practical self-defense simulations, practice is typically not allowed at indoor ranges in Michigan, as it would involve a commercially-untenable practice of devoting the entire use of an indoor range to a single shooter during practice.[77]

17.   Oakland has incurred significant additional costs to date due solely to the Township's prohibition on the siting of outdoor shooting ranges in its efforts to open its planned outdoor shooting range facility on the Property.[78] In addition, it has lost substantial revenue as a result of the Zoning Ordinance's effective prohibition on the siting of shooting ranges.[79] Oakland reasonably believes that the Township will enforce the Zoning Ordinance against it if it operates a shooting range on the property, which belief was reinforced by communications received from the Township on February 14, 2019 concerning shooting sounds claimed to be coming from the Property.[80]

18.   If Oakland's planned outdoor range facility were allowed to open in

---

[76] *Id.*, par. 27.
[77] *Id.*, par. 28.
[78] *Id.,* par. 34.
[79] *Id.*
[80] *Id.*, par. 35.

Howell Township, Plaintiffs Mr. Fresh, Mr. Remenar, Mr. Raines, Mr. Penrod, and

Mr. Dimitroff would be able to train and practice target shooting with their

firearms on a regular basis, thereby becoming more proficient shooters.[81]


Dated:  June 19, 2020

                              Respectfully submitted,

                              MYERS & MYERS, PLLC
                              Attorneys for Plaintiffs

                              By: /s/ Roger L. Myers
                              Roger L. Myers (P49186)
                              915 N. Michigan Avenue, Suite 200
                              Howell, MI 48843
                              (517) 540-1700

                              /s/ Martha A. Dean
                              Martha A. Dean, Esq. (Admitted 12/6/18)
                              **Law Offices of Martha A. Dean, LLC**
                              144 Reverknolls
                              Avon, CT 06001
                              Phone: 860-676-0033
                              Fax: 860-676-1112
                              mdean@mdeanlaw.com

---

[81] Ex. 11, Aff. S. Fresh; Ex.13, Aff. M. Remenar; Ex.12, Aff. J. Raines, Ex. 9, Aff.
R. Penrod; Ex. 15, E. Dimitroff.

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2020, I electronically filed the foregoing *Rule 56 Statement Of Material Facts Not In Dispute* with the Clerk of the Court using the ECF system.

By:  /s/ Roger L. Myers (P49186)