## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

OAKLAND TACTICAL SUPPLY, LLC, JASON RAINES, MATTHEW REMENAR, SCOTT FRESH, RONALD PENROD, and EDWARD DIMITROFF,

     Plaintiffs,

     v.

HOWELL TOWNSHIP,

     Defendant.

Case No.: 18-cv-13443

HON. BERNARD A. FRIEDMAN
MAG. JUDGE DAVID R. GRAND

**HOWELL TOWNSHIP'S SUPPLEMENTAL BRIEF SUPPORTING ENTRY OF JUDGMENT FOR THE TOWNSHIP POST-*BRUEN***

Roger L. Myers (P49186)
**Myers & Myers, PLLC**
Attorneys for Plaintiffs
915 N. Michigan Avenue, Suite 200
Howell, MI 48843
(517) 540-1700
rmyers@myers2law.com

Martha A. Dean (P305881)
**Law Offices of Martha A. Dean, LLC**
Co-Counsel for Plaintiffs
144 Reverknolls
Avon, CT 06001
(860) 676-0033
mdean@mdeanlaw.com

Matthew M. Hagerty (P66015)
**Myers & Myers PLLC**
Co-Counsel for Plaintiffs Oakland, Raines, Remenar, and Fresh
915 N. Michigan Ave
Howell, MI 48843
(517) 540-1700
mhagerty@myers2law.com

William K. Fahey (P27745)
Christopher S. Patterson (P74350)
**Fahey Schultz Burzych Rhodes PLC**
Attorneys for Defendant
4151 Okemos Road
Okemos, MI 48864
(517) 381-0100
wfahey@fsbrlaw.com
cpatterson@fsbrlaw.com

Thomas R. Meagher (P32959)
**Foster, Swift, Collins & Smith PC**
Co-Counsel for Defendant
313 S. Washington Square
Lansing, MI 48933-2193
517-371-8100
tmeagher@fosterswift.com

## HOWELL TOWNSHIP'S SUPPLEMENTAL BRIEF SUPPORTING ENTRY OF JUDGMENT FOR THE TOWNSHIP POST-*BRUEN*

### *** ORAL ARGUMENT REQUESTED ***

**I. Post-*Bruen*, this Court's September 10, 2020 Opinion (ECF No. 84) remains correct in its holding that Oakland Tactical's alleged course of conduct is not covered by the Second Amendment.**

The Sixth Circuit remanded this case to "allow [this Court] to consider the plausibility of Oakland Tactical's Second Amendment claim in light of the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (U.S. 2022)" (Appellate Docket ECF No. 43-2; ECF No. 84, PageID.2197; ECF No. 96, PageID.2205).[1] In response, this Court requested supplemental briefing on the Township's motion to dismiss (ECF No. 96, PageID.2006). As reflected in the Sixth Circuit and District Court orders, *Bruen* clarified the framework for analyzing alleged Second Amendment rights by rejecting the two-step means-end scrutiny analysis as a step too far.[2]

---

[1] For purposes of this Supplemental Brief, Defendant Howell Township (the "Township") will refer to all Plaintiffs collectively as "Oakland Tactical," consistent with the opinions of the Sixth Circuit and this Court, without conceding that all Plaintiffs have the same rights and standing under the Second Amendment.

[2] See *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012); *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 688 (6th Cir. 2016) (en banc) (both abrogated, at least in part, by *Bruen*, 142 S.Ct at 2126-27 (rejecting the two-step test employed in the Sixth Circuit)).

The Supreme Court's reasoning in *Bruen* does not change this Court's determination of the scope of the Second Amendment in its prior Opinion. *Bruen* affirms the plain text analysis of the Second Amendment, as informed by this nation's history, performed under *District Columbia v. Heller*, 554 U.S. 570, 592 (2008). As this Court held under *Heller*, the Court should again decide under *Bruen* that "the Second Amendment's plain text [does not] cover" Oakland Tactical's alleged right to "operate an outdoor, 1,000-yard shooting range on its property in the Agricultural-Residential District AR district of the Township." (Appellate ECF No. 43-2, at 1, quoting *Bruen*); *Bruen*, 142 S.Ct. at 2129-30.[3] This Court correctly found

---

[3] Since Oakland Tactical's filing of its Second-Amended Complaint, their claimed individual course of conduct has been framed as a right to "train," "operate," or "construct" "outdoor, long-distance shooting ranges" anywhere in the Township's [AR district], including a property surrounded by current residences. Oakland Tactical reiterated their position before this Court that the violation exists because the Township has a complete ban on locating a 1,000-yard shooting range anywhere in the Township. (ECF No. 65, PageID.1847.) Both this Court and the Sixth Circuit have recognized the extreme right alleged by Oakland Tactical. (See ECF No. 84, PageID.2084, quoting Oakland Tactical's Second Am. Compl. ("SAC") ¶ 6 ("'one or more outdoor shooting ranges to provide a safe location for residents in the area to practice target shooting for self-defense and other lawful purposes, including but not limited to a long distance (e.g. 1,000 yard) range for qualified shooters and public access rifle, shotgun and handgun ranges' on property it leases in Howell Township, Michigan"); Appellate Docket ECF No. 43-2, at 4, n. 3). Individual Plaintiffs further intimate their preference, despite acknowledging other ranges in the area, as convenience or a preference at SAC, ¶¶ 7-15, 31-32, 46-48, 54 60-64. Oakland Tactical further asserts the basis that the Township has an "effective ban" for outdoor long-range shooting ranges, despite conceding the Zoning Ordinance allows ranges and that there are other nearby ranges in the area. On appeal, Oakland Tactical asserted the same extreme position. (Appellate Docket ECF No. 25-13 (Appellants'

that Oakland Tactical's reliance on an extra-textual right to train and be proficient with a firearm in the Township does not entitle Oakland Tactical to locate a shooting range of the character they seek anywhere in the Township's AR district designed for agricultural and residential uses (See Township Zoning Ordinance, https://www.howelltownshipmi.org/contentfiledata/download/35 ).[4]

*Bruen* only affects this Court's September 20, 2020 opinion if this Court decides on remand that the plain text of the Second Amendment covers Oakland Tactical's alleged conduct. Only then, "[t]***he government must then*** justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2129-30 (emphasis added).

This Court's prior opinion already reviewed the scope of the Second Amendment under *Heller* and the Seventh Circuit cases heavily relied upon by Oakland Tactical, and determined that the Second Amendment does not cover

---

Brief, issues preserved.)) On oral argument before the Sixth Circuit, Oakland Tactical and the Sixth Circuit panel further discussed Oakland Tactical's specific claimed right to a long-range outdoor shooting range anywhere in the Township's jurisdiction (discussing the framing of Oakland Tactical's protective right: at approximately 1:40, 2:30, 2:50, and 10:40 minutes during oral argument). As discussed in this Brief, *infra*, Oakland Tactical's various versions of their claimed Second Amendment right all fail for the same reason—the plain text of the Second Amendment does not cover their proposed course of conduct.

[4] The Court may also consider matters of public record. *See McLaughlin v. CNX Gas Co.*, LLC, 639 F.App'x 296, 298-99 (6th Cir. 2016); *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010) (referencing *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co*., 508 F.3d 327, 336 (6th Cir. 2007).

3

Oakland Tactical's proposed location of an outdoor 1,000-yard shooting range anywhere they choose in the Township:

> [Oakland Tactical has] cited no cases that support the proposition that a local government, such as Howell Township, is required by the Second Amendment to grant a request to change its zoning ordinance such that the construction and use of shooting ranges **must be permitted anywhere** within that governmental entity's boundaries with a particular zoning designation. In the present case, the requested amendment was so expansive that it would have applied not only to Oakland Tactical's 352-acre parcel but to the entire AR district, which comprises 13,500 acres (21 square miles) or 65% or more of the township's land. [ECF No. 84, PageID.2088 (emphasis added); see also, *Id*. at 2028; Appellate Docket ECF No. 43-2.]

Even **looking beyond** the "plain text" at cases that have found Second Amendment protection for conduct that is "ancillary" (i.e., twice-removed from the constitutional text) to the "core right" (i.e., once-removed from the constitutional text) of self-defense and construing Oakland Tactical's Second Amended Complaint in the light most favorable to them, this Court found those cases to be unpersuasive to support the overextended right claimed by Oakland Tactical:

> None of the cases plaintiffs cite, and none of which the Court is aware, suggest that a municipality must permit a property owner (or a property lessee) to construct, and for interested gun owners to use, an outdoor, open-air, 1,000-[yard]shooting range, such as plaintiffs propose. Nor have plaintiffs cited a single case that suggests Howell Township must change its zoning ordinance to permit the construction and use of such a facility as a matter of right anywhere within the AR district, which in this case comprises fully two-thirds of the township's land. ***The claimed right simply is not encompassed by the Second Amendment***. [ECF No. 84, PageID.2089 (emphasis added).]

This Court also correctly found that "plaintiffs have failed to state a Second Amendment claim because their allegation that defendant bans 'all firearms ranges within the township,' SAC ¶ 4, is implausible" (ECF No. 84, PageID.2090). This Court explained "[t]he township's denial of this request, which would have permitted shooting ranges in two-thirds of the township's land, can hardly be viewed as a ban on shooting ranges" (ECF No. 84, PageID.2091). The Court further recognized that "[t]he alleged 'ban' on shooting ranges is all the more implausible in light of the ordinance provisions that permit recreational facilities." (*Id.*)

This Court's prior opinion is consistent both with *Heller*'s plain text analysis and *Bruen*'s rejection of the means-end scrutiny step, so the Court need not analyze Oakland Tactical's claims any further than deciding that their alleged right to locate an outdoor 1,000-yard shooting range anywhere in the Township is not protected. Post-*Bruen*, this Court should reach the same result as it did previously when analyzing the plain text of the Second Amendment, and dismiss this case.[5]

## II. The Township clarified that its Zoning Ordinance allows outdoor and indoor shooting ranges within the Township.

After this Court entered its Opinion, the Township adopted Zoning Ordinance Amendment No. 285 to clarify that shooting ranges are allowed within the

---

[5] Consistent with the supplemental briefing ordered by the Court, the Township does not restate all of its arguments set forth in its Motion to Dismiss (ECF No. 60) and its Reply (ECF No. 75) as to why Oakland Tactical's SAC should be dismissed.

Township. (See **Exhibit A**, Ordinance Amendment No. 285.) On appeal, the Township thoroughly explained Amendment No. 285 and the four land use districts that allow both indoor and outdoor shooting ranges. (See Appellate Docket ECF No. 38, including amended Zoning Map: https://www.howelltownshipmi.org/contentfiledata/download/38.) Ordinance No. 285 does not affect this Court's prior Opinion, but it does clarify the districts where outdoor and indoor ranges are allowed (and also adds a fourth zoning district).

During and after the Sixth Circuit appeal, the Township continues to review Ordinance No. 285, including addressing claims raised by Oakland Tactical in their supplemental briefing before the Sixth Circuit (Appellate Docket ECF No. 37). To further avoid any misimpression that the Township's Zoning Ordinance completely bans and prohibits shooting ranges, the Township Planning Commission has discussed the following: (1) amend Zoning Ordinance Article XVI, § 16.18(B)(10)(f) to modify any setbacks not otherwise imposed by the underlying district; (2) amend Zoning Ordinance Article XVI, § 16.18(B)(10)(e) to reduce the parcel size where an outdoor shooting range may be located; and (3) amend the title of Zoning Ordinance Article XVI, § 16.18 to correct an unintended drafting error that referenced "nonprofit," to avoid any impression of excluding for-profit indoor and outdoor recreational facilities (See **Exhibit B**, Minor Revisions to Ordinance No. 285 at 11,14).

Although the Township Planning Commission discussed these proposed amendments at its September 27, 2022 meeting, the Michigan Zoning Enabling Act requires a lengthy process to complete a textual amendment to the Township's Zoning Ordinance. See, for example, Mich. Comp. Laws § 125.3306-3308, 3401.

These proposed amendments to Ordinance No. 285 would have no effect on the claims before the Court in this case. As explained in further detail below, Oakland Tactical has no Second Amendment right to locate a 1,000-yard outdoor shooting range anywhere they choose in the Township. This Court's prior opinion remains correct with respect to the prior zoning ordinance provisions, Ordinance No. 285 (adopted after this Court's opinion), and the proposed amendments because all of the regulations provide for the location and operation of shooting ranges within the Township.

## III.   The Township's Zoning Ordinance is constitutional under *Bruen's* plain text and history test.

Post-*Bruen*, this Court should examine Oakland Tactical's claimed individual right to construct an outdoor 1,000-yard shooting range anywhere it chooses within the Township[6] under the following framework: (1) "[w]hen ***the Second***

---

[6] *Bruen* rejected the two-step test used by the Sixth Circuit in *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012). *Bruen*, at 2126, further provided that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen* did not establish that the burden rests on the Township to establish the existence or nonexistence of the right,

***Amendment's plain text covers an individual's conduct***, the Constitution presumptively protects that conduct. [(2)] The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2129-30; (Appellate Docket ECF No. 43-2). Consistent with *Heller*, 554 U.S. 570 (2008), the scope of the Second Amendment protections is determined by the Second Amendment's plain text, as informed by this Nation's history. *Id.* at 2129-30.

Fortunately, the Supreme Court carefully analyzed the plain text of the Second Amendment as understood through the nation's history and traditions in *Heller*, 554 U.S. at 570. Consistent with *Heller,* this Court should focus on the key textual

---

but *Bruen* did explicitly address that the Township has the burden of producing evidence *if the right* is protected by the plain text of the Second Amendment. *See also, United States v. Boyd*, 999 F.3d 171, 185 (3rd Cir. 2021) (requiring claimant to show "'a burden on conduct falling within the scope of the Second Amendment's guarantee'"). Based on the Supreme Court's holding in *Bruen*, this Court should require Oakland Tactical to first prove that the Second Amendment's plain text covers their desired outdoor 1,000-yard shooting range located anywhere in the Township that they choose. If the burden were placed on the Township, it would be an extreme departure from the common principles used in constitutional litigation. *See also, Kennedy v. Bremerton School District*, 142 S.Ct. 2407, 2421 (2022) (holding "a plaintiff bears certain burdens to demonstrate an infringement on [their] rights under the Free Exercise and Free Speech Clauses. If the plaintiff carries these burdens, the focus then shifts to the defendant to show that is actions were . . . justified[.]" However, even to the extent that the Court places the burden on the Township, the Township has satisfied its burden by relying on the numerous historical sources of the founding era analyzed in *Heller* indicating that the plain text covers an "instrument" that is bearable by an individual, which could not be a physical commercial place, such as an outdoor shooting range.

elements of the Second Amendment to determine the meaning of the Second Amendment.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. As explained in *Heller*, the "textual elements" of the Second Amendment's operative clause— "the right of the people to keep and bear Arms, shall not be infringed"—"guarantee the individual right to possess and carry weapons in case of ***confrontation***." 554 U.S. at 592 (emphasis added); U.S. CONST. amend. II. In reviewing these textual elements, *Heller* analyzed the meaning of "keep," "bear," and "Arms" as understood by history.

The Supreme Court determined the most natural reading of "keep Arms" in the Second Amendment is to "have weapons." *Heller* further confirmed that the right to "bear arms" refers to the right to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id.* (quoting Justice Ginsburg's definition in *Muscarelo v. United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting)). The phrase implies that the carrying of a weapon is for the purpose of "offensive or defensive action." *Heller,* 554 U.S. at 584.

In *Heller*, the Supreme Court described "Arms," as "[w]eapons of offence, or armour of defence" or "any thing that ***a man wears*** for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Id.* at 581 (citing dictionaries from relevant time periods) (emphasis added). The Second Amendment extends only to "***instruments*** that ***constitute bearable arms***." *Id.* at 582 (emphasis added).

The Supreme Court then summarized the meaning of the textual elements analyzed, concluding the Second Amendment guarantees ***the individual right to "possess and carry weapons in case of confrontation***." *Id.* at 592. The Supreme Court held the right was not unlimited, just as the First Amendment's right of free speech was not unlimited: "Thus, we do not read the Second Amendment to protect the right of citizens to carry arms ***for any sort of confrontation***, just as we do not read the First Amendment to protect the right of citizens to speak ***for any purpose***." *Id.* at 595 (emphasis added).

*Heller* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id*. at 626-27 ("We think that limitation is fairly supported by the historical tradition of prohibiting the carry of 'dangerous and unusual weapons'").

*Heller*'s textual approach resulted in the Second Amendment protecting the core right for "law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 544 U.S. at 635; *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (Stevens, J., dissenting) (plurality opinion) (quoting *Heller*, 554 U.S. at 635). On this understanding, the Court invalidated the District of Columbia's **complete ban** on handgun possession. *Heller*, 554 U.S. at 635, 628 ("the inherent right of self-defense has been central to the Second Amendment right," and the District's restrictions apply "to the home, where the need for defense of self, family, and property is most acute").

Following *Heller*, the Supreme Court reviewed Chicago's handgun **ban**. *McDonald*, 561 U.S. at 785 (2010) (plurality opinion). In *McDonald*, the Supreme Court held that the Second Amendment applies to local governments through the Fourteenth Amendment. *McDonald*, 561 U.S. at 790. The Supreme Court held that the scope of the right must be determined by a textual and historical inquiry. *Id.* at 770–77.

Most recently, the *Bruen* decision reaffirms the textual and historical analysis employed in *Heller* and *McDonald*. With heavy reliance upon *Heller*, the Supreme Court concluded that the plain text of the Second Amendment protects "carrying handguns publicly for self-defense." *Bruen,* at 2119. According to the Supreme Court, the Second Amendment's plain text meaning of "bear Arms" naturally

11

encompasses public carry. *Id.* at 2135. *Bruen* emphasized that the meaning of the term "arms" remains central to analyzing an individual's specific rights, reiterating that "the Second Amendment's definition of 'arms' is fixed according to its historical understanding." *Id.* at 2132.

*Heller*, *McDonald*, and *Bruen*'s analyses are instructive for this Court because "to keep and bear Arms" cannot be construed according to its historical understanding to include a right to locate, construct, or operate an "outdoor, 1,000-yard shooting range" in any location Oakland Tactical chooses. See *Heller*, 554 U.S. 634-35 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them"). No court has ever held that an "outdoor, 1,000-yard shooting range" is an "arm" or "instrument" that constitutes "bearable arms." By its plain meaning, one cannot "bear," or carry an outdoor, 1,000-yard shooting range.

The Second Amendment's plain text does not protect an overextended, extra-textual right to locate or construct an outdoor, 1,000-yard shooting range wherever one chooses. *Heller* further held that not all longstanding regulatory measures are presumptively unlawful, including "laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626-27. That list is not exhaustive and supports upholding zoning regulations. *Id.* at 627 n. 26. *Heller* discussed—in *dicta* not central to *Heller*'s holding—that the Second Amendment includes the right to

**bear** arms for recreation and other lawful purposes. *Id*. at 624. Hunting has been discussed as one of those potential rights. *Id.*

Even these other rights that *Heller* discussed in *dicta*, however, do not encompass any right to locate an outdoor shooting range or facility to train at any place a person chooses. The history of the adoption of the Second Amendment shows when the First Congress debated the Second Amendment, being "trained" was regarded as separate and distinct from keeping and bearing arms. *The Congressional Register* (August 17, 1789).[7] The First House of Representatives considered adding "trained" language to the Second Amendment but opted to not include it. *Id.*

---

[7] At that meeting, congressman Elbridge Gerry of Massachusetts proposed language that would guarantee the right to train in the Second Amendment:

> Mr. GERRY Objected to the first part of the clause, on account of the uncertainty with which it is expressed: "A well-regulated militia being the best security of a free state, admitted an idea that a standing army was a secondary one. It ought to read  'a well regulated militia, ***trained to arms***,' in which case it would become the duty of the government to provide this security, and furnish a greater certainty of its being done. Mr. GERRY'S motion not being seconded, the question was put on the clause as reported, which being adopted." [*Id*. (emphasis added).]

The right to train was clearly distinct from the right to keep and bear arms as the State of Virginia did specifically incorporate a right to be "trained" at that same time:

> That a well regulated Militia, composed of the body of the people, ***trained to Arms***, is the proper, natural, & safe defence [SIC] of a free State; that standing Armies, in Time of Peace, shou'd be avoided, as dangerous to Liberty; and that, in all cases, the Military shou'd be under

The founding era texts examined by Oakland Tactical on appeal further show that the Township's construction of the Second Amendment is proper. The sermon, articles and historical references discussed on appeal do not support the supposition that a 1,000-yard outdoor shooting range can be located without restriction anywhere a person may choose in the Township (See Appellate Docket, ECF No. 25, at 23-28). The nation's historical accounts of shooting by residents are similar to the shooting that can occur in the Township on private property now (See *id* (shooting at an apple, shooting at 100 yards, shooting at 150 yards, and discussing training in the context of militia/military skills)).

Oakland Tactical is not alleging an infringement on hunting, training, or being prevented from acquiring reasonable proficiency in the use of firearms for purposes of armed defense. As this Court recognized, individuals can train and shoot in the Township with few limits (ECF No. 84, PageID.2091; ECF No. 46, PageID.1127 ("Accessory uses are already permitted in the Township by right, meaning that under the current Ordinance, Plaintiffs may use firearms for shooting, training, and recreational activities")). Instead, Oakland Tactical alleges a greatly overextended

---

strict Subordination to, & governed by, the Civil power.
[(Emphasis added) Virginia Declaration of Rights (June 12, 1776).]

Virginia included the same right in its state Constitution. Va. Const. § 13 ("That a well-regulated militia, composed of the body of the people, ***trained to arms*** . . . .").

right, the claimed right to operate, construct, or train at an outdoor, 1000-yard shooting range anywhere one may choose in the residential areas of the Township.[8] While "long range target shooting" may be their preferred mode of sport and competition, nothing in *Heller* remotely suggests Oakland Tactical may use firearms in whatever manner they prefer. They are not entitled to a shooting range to occupy as much space as the Plaintiff enthusiasts of "long-range target practice" might desire. The plain text of the Second Amendment does not protect their favorite mode and method of target shooting. Post-*Bruen*, there is no presumptive constitutional protection for such a claimed right that can be derived from the text of the Second Amendment. The analysis should stop there—as it did in *Bruen*—and this Court should reaffirm its dismissal in favor of the Township. See *Bruen*, 142 S.Ct. at 2129-30.

---

[8] Oakland Tactical's alleged right would essentially allow an intense commercial activity in the Township's residential areas, and if the property they have leased were located in the Township's other residential districts, their reading of the Second Amendment would similarly mandate a 1,000-yard, outdoor shooting range in those districts as well. This reading of the Second Amendment is unfounded and has serious practical concerns with the improper location of shooting ranges that pose public health and safety impacts on nearby residences. See, for example, the numerous noise complaints caused by the Michigan Department of Natural Resources ("DNR") shooting area: https://thecountypress.mihomepaper.com/articles/shooting-pit-draws-70-calls-to-police/.

**IV.**   **Although other Circuits have recognized an ancillary right to range training, Oakland Tactical has no protected Second Amendment right to construct, operate, and train at an outdoor, 1,000-yard shooting range wherever they choose.**

The Supreme Court has squarely addressed the core rights protected by the plain text of the Second Amendment in its prior holdings. The Supreme Court has not yet addressed whether any rights exist outside the plain text as ancillary rights. The *Bruen* majority, including its author Justice Thomas, have emphasized the substantial burden on recognizing constitutional rights falling outside the plain text of the Bill of Rights.[9] Notwithstanding the limits of the plain text, other circuits, including the Third, Seventh, and Ninth Circuits, have recognized ancillary rights under the Second Amendment only to the extent they support the exercise of the core right of self-defense embodied in the Second Amendment. See *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ("*Ezell I*") and *Ezell v. City of Chicago*, 846 F.3d 888 (7th Cir. 2017) ("*Ezell II*"); see also *Drummond v. Robinson Twp*, 9 F4th

---

[9] In the same term the Supreme Court issued *Bruen*, the court issued a decision in *Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228 (U.S. 2022). In *Dobbs*, the court analyzed rights outside the constitutional text, articulating a narrow test for identifying what substantive rights are incorporated against the States by the Due Process Clause of the Fourteenth Amendment. In such a context, the *individual asserting the right has the burden* of establishing the right. *Id.* at 2246. Where there is no historical evidence to support the claimed right, the right is not acknowledged by the court. *Glucksberg*, 521 U.S. 702, 703 (1997). Where there is conflicting historical evidence of the right being recognized, the Court does not recognize a right as existing. See *Dobbs,* 142 S.Ct. at 2247-58.

217, 228 (3rd Cir. 2021) ("*Drummond*"); see also *Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014).

Pre-*Bruen*, the Third, Seventh, and Ninth Circuits' holdings were based upon concerns that, but for certain ancillary rights being protected, the right to "keep and bear Arms" would have little meaning. *Ezell I*, 651 F.3d, at 684; *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) ("[T]he core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms"); *Jackson*, 746 F.3d at 967 ("[T]he right to possess firearms for protection implies a corresponding right to obtain the bullets necessary to use them." (internal quotations omitted)); *Drummond*, 9 F4th at 227 (*"*A right to bear those weapons, after all, 'wouldn't mean much without the training and practice that make [them] effective.'" (quoting *Ezell I*, 651 F.3d at 704)). These decisions, however, were predicated upon identifying an individual right that was subject to effective bans—just like the Supreme Court reviewed in *Heller*, *McDonald*, and *Bruen*.

Asking this Court to greatly extend previously-recognized constitutional protections, Oakland Tactical primarily relies upon the *Ezell* cases (ECF No. 65, PageID.1866). The Township has discussed the factual differences between these cases at great length in its earlier filings (ECF No. 67, PageID.1930-1933). The *Ezell* cases have no bearing on and do not support a right to locate a 1,000-yard outdoor shooting range anywhere Oakland Tactical might choose in the Township. The *Ezell*

cases discuss the right to practice shooting generally in the context of an effective ban on places to practice shooting—an activity allowed on private property throughout all of the Township's zoning districts. *Ezell I* and *II* also did not find that this nation's history and tradition require Oakland Tactical's favored type of range (indoor vs. outdoor) or that a specific length is necessary (50 yards vs. 1,000 yards). See *Ezell I*, 651 F.3d at 704 ("the core right wouldn't mean much *without* the *training and practice* that make it effective") (emphasis added).

These prior cases relied upon an analysis of the Second Amendment that was not consistent with the plain text as mandated post-*Bruen*. The rationale for these Circuits to extend beyond the plain text based on history and tradition was to prevent the core right to possess a firearm for *use in confrontation* from being rendered meaningless.[10] For example, the Ninth Circuit held the Second Amendment covered

---

[10] *Heller*, 554 U.S. at 595-97, analyzes the meaning of "well regulated militia" within the prefatory clause of the Second Amendment, noting it implies an "imposition" of proper discipline and "training." That "imposition" was often imposed through militia acts; however, the Supreme Court also recognized that the right to "keep arms" and bear arms was "an individual right unconnected with militia service." *Id.* at 612. So, the history regarding militia acts and civil marksmanship programs are not on point for Oakland Tactical establishing that outdoor, open-air, long range shooting ranges fall within the scope of the Second Amendment. See, for example, Uniform Militia Act of 1792 (1 US Stat. 271). It actually proves the contrary. The historical scope of militia training demonstrates no traditional right to train anywhere one chooses. The training outlined by federal and state militia laws was restricted in various ways that were more stringent than the Township's Zoning Ordinance. For example, it typically occurred only several times a year at local muster grounds and was tightly controlled. Jerome B. Lucke, *History of the New Haven Grays from Sept.*

ammunition because, unlike a restriction on making suppressors, "[a] regulation *eliminating* a person's ability to obtain or use ammunition could thereby make it impossible to use firearms for their core purpose." See *Jackson*, 746 F.3d at 967. In *Drummond*, the township similarly *eliminated* the use of center-fire cartridges, causing concern for the ability to practice with an entire category of "arms." *Drummond*, 9 F4th at 230. *Ezell I* and *Ezell II* were concerned with the Chicago's mandatory requirement that range training be required for a permit to purchase a handgun and yet *effectively* imposed a *complete ban* on available shooting ranges one could otherwise train to satisfy licensure requirements, thus directly impacting the ability to keep and bear arms. *Ezell I*, 651 F.3d at 698; *Ezell II*, 846 F.3d at 898.

The Seventh Circuit reached a very similar conclusion in acknowledging zoning schemes that regulate shooting range locations and other operation standards,[11] noting that "Chicago has room to regulate the construction and operation

---

*13, 1816, to Sept. 13, 1876* (New Haven, CT: Tuttle, Morehouse & Taylor, 1876), 30-31, 50-51, 79-80; Randall S. Schon, *Militia Artifacts in the Collections of the New York State Historical Association and The Farmers' Museum* (Cooperstown, NY: The Farmers' Museum, 1991), 2; Keith Ehrman and Dennis A. Henigan, *"The Second Amendment in the Twentieth Century: Have You Seen Your Militia Lately?"* University of Dayton Law Review 15 (1989): 36; Mahon, American Militia, 48–49, 66–67 (The "history of the state militias between 1800 and the 1870s is one of total abandonment, disorganization, and degeneration").

[11] The Third Circuit also acknowledged that regulations restricting firearm practice to certain zoning districts "rests on deep historical roots." *Drummond*, 9 F4th at 228.

of firing ranges to address genuine risks to public health and safety. . . This includes

setting rules about where firing ranges may locate and the terms on which minors

may enter." *Ezell II*, 846 F.3d at 898.

The Third, Seventh, and Ninth Circuits' recognition of ancillary rights to

avoid impingement of the core right to self-defense is not determinative here because

such rights can be exercised in various other forms within the Township and nearby,

including outdoors on private property, and at nearby indoor ranges and outdoor

ranges with distances less than 1,000 yards. Oakland Tactical could alternatively use

simulators and other calibers of long guns to simulate the same long distances they

seek here. *Ezell I*, 651 F.3d at 712 (Rovner, J., concurring). Oakland Tactical fails

to allege how discharging what are presumably akin to military-style sniper rifles[12]

at targets in a civil, competitive environment at a distance of 1,000 yards is even

necessary or reasonable for training for taking game while hunting; much less how

shooting at such a distance could possibly be justified on the basis of "self-defense."

See also, e.g., *Hunters United for Sunday Hunting v. Pennsylvania Game Comm'n,*

---

[12] The rifles Oakland Tactical seeks to use in an outdoor, 1,000-yard shooting range for competition can be akin to the Barrett .50 BMG, a large caliber "sniper rifle" utilized by snipers in the military. The Barret .50 BMG can hit a target at 1500-2000 yards with the "ability to destroy enemy war material [sic] such as communications equipment, vehicles, weapons and other items with the heavy .50 BMG round." Kyle Mizokami, *The Unique History of the Barrett Rifle*, THE NATIONAL INTEREST (May 3, 2021), https://nationalinterest.org/blog/reboot/unique-history-barrett-rifle-184113.

28 F. Supp. 3d 340, 346 (M.D. Pa. 2014) (finding "no legal support for Plaintiffs' argument that Second Amendment protections extend to recreational hunting"); Joseph Blocher, *Hunting and the Second Amendment*, 91 Notre Dame L. Rev. 133, 137 (2015) ("[T]he case for Second Amendment coverage of hunting and recreation is tenuous").

The Township does not regulate the licensure or possession of "arms" in the Township (See ECF No. 37, PageID.862-863; ECF No. 46; ECF No. 60, PageID.1133,1137, 1244-1253; Township's Motion and Brief setting forth the ability for Oakland Tactical individuals to hunt, train, and target shoot within the Township on private property and public lands in the Township). Oakland Tactical further recognizes that other shooting ranges are permitted in the Township, just not at the specific property surrounded by residences that Oakland Tactical desires (See ECF No. 44 ¶¶ 8-10, 13, 30, 32, PageID.1086-1087, 1089, 1094). Oakland Tactical further recognizes in the SAC that ranges are allowed in some of the Township's zoning districts, and that other indoor and outdoor ranges are in the vicinity of Oakland Tactical's desired location (See ECF No. 44 at ¶¶ 9, 10, 27, 60, PageID. 1087-1088, 1093-1094, 1101). The Township also allows long gun or pistol training on individual private property in the AR district (similar to the historical examples cited by Oakland Tactical on appeal). (See ECF No. 46, at ¶¶ 12, 16, 22.)

Although Oakland Tactical claims to locate such a commercial enterprise out of convenience for the individual Plaintiffs (only two of whom reside in the Township, and the others are apparently not provided the same space in their own home communities), the Court can take judicial notice of the numerous available shooting ranges in the nearby and surrounding areas. The Township's Zoning Map also outlines the available land that is currently zoned for placement of shooting ranges.

The Court's prior holding that Oakland Tactical's claimed right is far outside the plain text of the Second Amendment remains correct. See Mich. Comp. Laws § 691.1543 (1989). This Court should not as a matter of first impression recognize an ancillary Second Amendment right to train and be proficient in firearms at an outdoor, 1,000-yard shooting range located anywhere within the Township, but should hold that such a claimed right stretches far past the plain text of the Second Amendment.

## V. The Township need not yet provide analogous historical regulations to uphold the Township Zoning Ordinance, since there is no duty under *Bruen* to provide such evidence absent a right within the plain text of the Second Amendment.

The Sixth Circuit made it clear that if the District Court agrees with the Township that Oakland Tactical's alleged right to operate, construct, or train at a 1,000-yard outdoor shooting range anywhere they choose in the Township ***is not***

covered by the plain text of the Second Amendment, this Court **need go no further,** and judgment should be entered in the Township's favor dismissing Oakland Tactical's complaint (Appellate Docket ECF No. 43-2, at 4-5). At this juncture of the briefing, the Township has **no** burden under *Bruen* to "demonstrate that [the Township's Zoning Ordinance] is consistent with this Nation's historical tradition of firearm regulations." [13] See *Bruen*, 142 S.Ct. 2111, 2138 (finding no "tradition of broadly prohibiting the public carry of commonly used firearms for self-defense" or "limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense").

The Township is prepared to prove that its Zoning Ordinance is consistent with the nation's historical tradition of firearm regulation by "analogical reasoning," upon a finding of this Court that Oakland Tactical has alleged a right within the scope of the plain text of the Second Amendment. As stated by renowned Second Amendment law professors in their amicus brief filed in *Bruen*:

> Firearms are and always have been subject to regulation throughout the United States. . . . Historically, such laws 'were not only ubiquitous, numbering in the thousands; they spanned every conceivable category of regulation, from gun acquisition, sale, possession, transport, and use, including deprivation of use through outright confiscation, to hunting

---

[13] The Southern District of California, in *United States v. Tilotta*, did not determine if the challenged regulations in that case were consistent with this Nation's historical traditions because the plain text of the Second Amendment did not cover the proposed course of conduct. No. 3:19-cr-04768-GPC, slip op. at 6 (S.D. Cal. Aug. 30, 2022) (**Exhibit C**).

and recreational regulations, to registration and express guns bans."
Brief of Second Amendment Law Professors as Amici Curiae in
Support of Neither Party, p. 17, *Bruen*, 142 S.Ct. 2111.

Should the Court so find, the Township would file supplemental briefing with
appendices analyzing and tracing this nation's history of firearm regulation and its
parallels to the Township's Zoning Ordinance, which would include in excess of 70
pages of historical analogs.[14]

    Consistent with this Court's order to address *Bruen*, the Township respectfully
requests that the Court first decide if locating, constructing, and training at a 1,000-
yard outdoor shooting range anywhere within the Township is within the plain text
of the Second Amendment. Only then should the Township be required under *Bruen*
to produce evidence showing the Township's Zoning Ordinance is also consistent
with historical analogs.

---

[14] "So even if a modern-day regulation is not a dead ringer for historical precursors,
it still may be analogous enough to pass constitutional muster." *Bruen*, 142 S.Ct. at
2133; *McDonald*, 561 U.S. at 804 (Scalia, J., concurring) (the historical evidence
does not have to be the "perfect means ... but whether it is the best means available
in an imperfect world"). The Third Circuit recognized that rules "restricting firearms
purchase and practice ***to zoning districts compatible with those uses,***" like the
"longstanding prohibitions" *Heller* approved, rests on deep historical roots.
*Drummond*, 9 F.4th at 228 (quoting *Heller*, 554 US. at 626) (emphasis added); *Vill.
of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 386-87 (1926) (upholding the power
to zone).

## CONCLUSION

The plain text of the Second Amendment, as informed by the nation's history, fails to protect Oakland Tactical's claimed rights as stated in their Second Amended Complaint.[15] An individual is not entitled to operate, construct, and train at an outdoor, 1,000-yard shooting range in whatever location he or she chooses. Under Oakland Tactical's flawed logic, every township or municipality would be required to allow outdoor, 1,000-yard shooting ranges as a matter of right within their boundaries—regardless of whether those chosen locations are consistent with surrounding land uses or consistent with the land uses as planned and zoned for the community's needs. This mistaken interpretation of the Second Amendment cannot be supported, and the Court should reaffirm its September 20, 2020 Opinion and grant the Township's motion to dismiss.

Respectfully submitted,

Christopher S. Patterson (P74350)
**Fahey Schultz Burzych Rhodes PLC**
Attorneys for Defendant
4151 Okemos Road
Okemos, MI 48864
(517) 381-0100

Dated: September 30, 2022

---

[15] The Township maintains that for the same reasons set forth in its brief in response to Oakland Tactical's request to amend its Second Amended Complaint, such request should not be granted. Moreover, the Sixth Circuit's direction on remand did not direct this Court to reconsider its decision to deny Oakland Tactical's third request to amend its Complaint (Appellate Docket ECF No. 42-3).

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument, and related documents if any, was served upon the attorneys of record of all parties by the court's efiling/service system on September 30, 2022.  The above statement is true to the best of my knowledge, information and belief.

Respectfully submitted,

Christopher S. Patterson (P74350)
**Fahey Schultz Burzych Rhodes PLC**
Attorneys for Defendant
4151 Okemos Road
Okemos, MI 48864
(517) 381-0100